J-S46029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MATTHEW P. MIKOTTIS | |
| Appellant | No. 1991 MDA 2016 |

Appeal from the Judgment of Sentence November 22, 2016
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003289-2015

BEFORE:  BOWES, J., OLSON, J., AND STEVENS, P.J.E.*

CONCURRING MEMORANDUM BY BOWES, J.:          **FILED JUNE 01, 2018**

I concur, as I agree with President Judge Emeritus Stevens that the suppression claim is waived.  However, I view the significance of the waiver as pertaining to Appellant's decision to forego suppression motions as part of his plea bargain, which was negotiated based on then-existing law.  I write separately to express my view that Appellant's claim is, in truth, an ineffective assistance of counsel claim, and is therefore subject to the general rule that such claims must be brought under the PCRA.

On May 4, 2016, Appellant entered a guilty plea to one count of driving under the influence at the highest rate.  Following his guilty plea, but before sentencing, the United States Supreme Court issued ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016), holding that warrantless blood tests were

* Former Justice specially assigned to the Superior Court.

not *per se* authorized as a search incident to arrest. **See Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa.Super. 2017) ("**Birchfield** makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent[.]") (emphasis in original). Appellant then sought to withdraw his guilty plea so he could take advantage of **Birchfield** by filing a suppression motion contesting the validity of his consensual blood draw. At no time did he claim he was innocent. The trial court denied the request, holding that Appellant waived any suppression issue by pleading guilty.

Pre-sentence motions to withdraw a guilty plea traditionally require a claim of innocence. Herein, although Appellant does not frame his claim as such, his attempt to withdraw sounds in ineffectiveness as the sole basis for withdrawing his plea is that he wished to litigate the **Birchfield** issue. However, Appellant could have pursued precisely the same suppression issue when he pleaded guilty even if **Birchfield** was not then-pending.[1] As we explained in **Commonwealth v. Hickman**, 799 A.2d 136 (Pa.Super. 2002),

_____

[1] The Supreme Court of the United States had occasion to decide **Birchfield** because the attorneys in the consolidated cases preserved and pursued the issues. Therefore, the notion that Appellant could not have similarly sought suppression is objectively incorrect. Surely, pre-**Birchfield** an attorney might think that the probability of succeeding on such a motion was quite low, but that point speaks to the generic issue of retroactive application of new law. Had Appellant elected to immediately proceed to sentencing, he clearly would not be entitled to raise the suppression issue on appeal. **See Commonwealth v. Cabeza**, 469 A.2d 146 (Pa. 1983) (application of new rule applies where issue is properly preserved at all stages of litigation).

- 2 -

an attempt to establish that a plea was unknowing or involuntary due to deficient legal advice sounds in ineffectiveness.

> A criminal defendant has the right to effective counsel during a plea process as well as during a trial. **Hill v. Lockhart,** 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. **Commonwealth v. Allen**, 557 Pa. 135, 732 A.2d 582 (1999). Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" **Hill,** 474 U.S. at 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (quoting **McMann v. Richardson**, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

**Id**. at 141.

Accordingly, Appellant's claim is an allegation that his plea was involuntary due to ineffective assistance of counsel. In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reiterated its preference that claims pertaining to ineffectiveness be deferred to PCRA review. "By way of summary, we hold that [the] general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule[.]" **Id**. at 563.

This stated preference poses an impediment to the trial court's ability to entertain the instant motion to withdraw the plea and, concomitantly, our ability to review that claim on direct review. By requiring Appellant to raise this claim during collateral review, I view our decision as faithfully

implementing the Supreme Court's directive against creating exceptions to the deferral rule.

I now address the learned Dissent's thoughtful criticisms of this analytical framework. Preliminarily, it appears that Judge Olson agrees the instant claim sounds in ineffectiveness, writing:

> At a minimum, Appellant and his counsel could have been aware that the Supreme Court of the United States granted *certiorari* in **Birchfield** five months prior to Appellant's guilty plea. Nonetheless, Appellant was not aware that the outcome of that case would render his blood draw subject to challenge. Thus, although Appellant should have waited to plead guilty until **Birchfield** was decided, that does not mean the **Birchfield** decision failed to provide a fair and just reason for Appellant to seek withdrawal of his guilty plea.

Dissenting Memorandum, at 10-11 (citations and footnote omitted). Respectfully, that is a longer way of saying "counsel was ineffective for advising Appellant to accept the plea in *lieu* of pursuing a suppression motion based on **Birchfield**." The Dissent opts to characterize counsel's omissions, *i.e.* purported ineffectiveness, as constituting a fair and just reason to grant withdrawal. However, applying the label of "fairness and justice" cannot avoid the fact that Appellant's underlying theory of relief is a claim of ineffective assistance of counsel.

I now address the Dissent's attempt to fit this case into existing case law. Our Supreme Court observed in **Commonwealth v. Carrasquillo**, 115 A.3d 1284, 1292 (Pa. 2015), that "the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable

demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Id*. at 1292. The Dissent views the reference to "fairness and justice" as encompassing claims seeking to undo a plea based solely upon deficient legal advice.

I recognize that the pertinent Rule of Criminal Procedure does not expressly limit withdrawals to claims of innocence; instead, it simply provides:

> (A) At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.

Pa.R.Crim.P. 591.

*Carrasquillo* set forth a standard to be applied for Rule 591 motions to withdraw that raise innocence, and rejected the notion that a bare assertion of innocence justifies withdrawal. "This case, in our view, illustrates why the existing *per se* approach **to innocence claims** is unsatisfactory." *Id*. at 1292 (emphasis added). Since *Carrasquillo* rejected a *per se* approach that required a trial court to always grant an innocence claim, I find the Dissent's *per se* approach to claims that have absolutely nothing to do with innocence untenable. In this regard, *Carrasquillo* did not hold that cases such as *Commonwealth v. Tennison*, 969 A.2d 572, 578 (Pa.Super. 2009), which held that an attempt to withdraw a guilty plea was properly denied as pre-textual in that the defendant simply wished to delay the proceedings, were incorrectly decided.

- 5 -

The Dissent discusses **Commonwealth v. Reider**, 386 A.2d 559 (Pa.Super. 1978) (*per curiam*), in which the Court appeared to embrace ineffectiveness as a basis for permitting withdrawal. Therein, the defendant pled guilty after a psychiatrist determined that he was mentally competent to stand trial. A later competency examination ordered by the trial court revealed that the defendant possessed psychotic characteristics. **Id**. at 559. This Court held that the trial court improperly denied the request to withdraw the guilty plea:

> Although the appellant and his attorney were aware of his past history, the [first] report . . . apparently extinguished any hope of an insanity defense. The second report, that was made after the plea was accepted, did not conclude that appellant was legally insane, but it did state he suffered from paranoia. We do not feel that appellant's "fair and just" reason is a very substantial one since he already was aware of the possibility of an insanity defense from his prior history. However, when we balance this against the second factor, the prejudice to the Commonwealth, we find that the requested withdrawal should have been granted.

**Id**. at 560.

I agree that **Reider** implicitly concluded that ineffectiveness, *i.e.* the failure to procure a favorable expert report at an earlier time, provided a "fair and just" reason to permit withdrawal, which was balanced against prejudice to the Commonwealth. However, **Reider** predates our Supreme Court's line of cases deferring ineffectiveness claims to collateral review. Therefore, I do not agree that **Reider** is dispositive. Furthermore, **Reider** cited **Commonwealth v. Forbes**, 299 A.2d 268 (Pa. 1973) for the proposition that

requests to withdraw guilty pleas prior to sentencing should be liberally allowed. However, **Forbes** was an innocence case: "Obviously, appellant, **by this assertion of innocence**—so early in the proceedings—offered a 'fair and just' reason for withdrawal of his plea." **Id**. at 272 (emphasis added). **See Carrasquillo**, **supra** (discussing **Forbes**).

The Dissent also discusses a more recent opinion from this Court, **Commonwealth v. Islas**, 156 A.3d 1185, 1192 (Pa.Super. 2017), which held that the trial court erred in denying a pre-sentence motion to withdraw a guilty plea. This holding was predicated, in part, on counsel's misadvice. However, the case is distinguishable, as the ineffectiveness claim therein was a subsidiary component of his actual innocence claim.

> Islas' assertion of innocence, unlike that of the defendants in **Carrasquillo** and **[Commonwealth v. Blango**, 150 A.3d 45 (Pa.Super. 2016)]**, was not "mere, bare, or non-colorable" but instead was "at least plausible." At the hearing on his motion to withdraw, Islas testified that: he did not engage in the charged conduct; he had maintained his innocence when interviewed by law enforcement; had the conduct occurred as alleged, it would have been witnessed by other campers and counselors in the cabin at the time; the victim had a motive to fabricate the charges; the victim had delayed in reporting the first incident; and Islas was of good character, had no criminal record, and had never received a similar complaint in the many years he had been working in the field. Islas further testified that his new counsel had explained to him, as prior counsel had not, his available defenses, including his ability to call character witnesses on his behalf.

*Id*. at 1191 (citations to transcript omitted).[2]   This foregoing quotation illustrates that Islas sought withdrawal on innocence grounds, and his prior counsel's advice was but one of many reasons relied upon by **Islas**.   Thus, while **Islas** considered the ineffectiveness of counsel's advice, *i.e.* the failure to explain the right to call character witnesses, that fact was considered as one component of an innocence assertion.   Unlike Appellant herein, Islas desired to proceed to trial and contest his guilt, not raise a suppression issue that has nothing to do with guilt or innocence.

In sum, our precedents do not directly address whether an ineffectiveness claim premised on a desire to pursue a Fourth Amendment suppression remedy which was bolstered by a change in law constitutes a fair and just reason to permit withdrawal.   In this regard, I disagree with the Dissent's assumption that fairness and justice clearly require the trial court to permit Appellant to withdraw his plea.   My reasoning follows.

First, the Dissent adopts a *per se* rule, holding that Appellant was absolutely entitled to withdraw his plea without an evidentiary hearing. However, there is nothing in the record to indicate whether counsel considered the possibility of filing a suppression motion in this case.   By permitting Appellant to withdraw his guilty plea without even establishing ineffectiveness

---

[2] As reflected by the reference to new counsel, the motion to withdraw in **Islas** did not assert counsel's own ineffectiveness, unlike the situation herein.

of counsel as described in **Hickman**, **supra**, the Dissent's rule means that defendants may always benefit from **favorable** changes in the law while avoiding unfavorable outcomes. Herein, Appellant entered his plea prior to **Birchfield**, and the Dissent does not acknowledge that the case could have been decided the other way. **See Birchfield**, **supra** at 2198 ("The better (and far simpler) way to resolve these cases is by applying the *per se* rule that . . . both warrantless breath and blood tests are constitutional.") (Thomas, J., concurring and dissenting).[3] Obviously, Appellant would not have sought withdrawal had Justice Thomas's opinion carried the day. Viewed this way, the pre-sentence motion to withdraw is effectively a sentence testing mechanism: if the law changes in a way that is favorable to the defendant, he may withdraw his plea; if not, he keeps his plea intact.[4]

---

[3] The Dissent, citing SCOTUSblog, states that United States Supreme Court watchers predicted that **Birchfield** would result in a defendant-friendly outcome. I do not dispute that point, but I question its relevance. If the SCOTUSblog experts were uncertain of the outcome, does that mean relief would not be automatically warranted? The Dissent's rule, in my view, is categorical: a favorable change in the law requires relief.

[4] The Dissent states that Appellant "should have waited to plead guilty until **Birchfield** was decided," as any risk associated with the possibility of the Commonwealth withdrawing a plea offer dwarfed the possible benefit of raising **Birchfield** after that case was issued. That may be true, but it fails to recognize that the Commonwealth is not obligated to consent to a postponement designed to delay trial.

On the other hand, had Appellant sought suppression from the start and lost, he almost certainly would have ended up with a worse sentence if the United States Supreme Court had ultimately decided *Birchfield* in an unfavorable manner. The mitigation of risk through foregoing suppression motions is part and parcel of the plea process. *See United States v. Johnson*, 410 F.3d 137, 153 (4th Cir. 2005) ("A plea agreement, like any contract, allocates risk. And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompanies a guilty plea.") (cleaned up). This point alone demonstrates the wisdom of rejecting the Dissent's *per se* approach.

Second, the Dissent's application of fairness and justice in reality manufactures retroactive application of *Birchfield*.[5] However, even assuming that the nebulous phrase "fairness and justice" justifies permitting Appellant to benefit from *Birchfield*, the Dissent's rule simply creates another type of unfairness, as those individuals who were already on direct appeal when *Birchfield* was decided surely cannot benefit from its ruling. Furthermore, if a change in law constitutes a "fair and just" reason pre-sentencing, as the Dissent posits, it is but a short jump to claiming a change in law satisfies the

---

[5] I refer to manufacturing issue preservation in the sense that, but for the motion to withdraw, Appellant could not raise application of *Birchfield* on direct appeal.

- 10 -

"manifest injustice" standard applicable to post-sentencing motions to withdraw. In short, the Dissent fails to explain why Appellant is entitled to greater benefits than similarly-situated defendants.[6]

We can avoid this disparate treatment problem by simply requiring these defendants to litigate their involuntary plea claims *via* an ineffective assistance of counsel claim. Nothing we say today forecloses Appellant from seeking relief, as he remains free to pursue his ineffectiveness claim through the PCRA. ***See Commonwealth v. Orlando***, 156 A.3d 1274, 1282 (Pa. 2017) (reviewing denial of PCRA relief based on claim that trial counsel ineffectively advised a guilty plea). Indeed, pursuant to ***Holmes***, ***supra***, Appellant could have immediately sought this same relief in a post-sentence motion by waiving his right to direct appeal. Thus, our holding does not find Appellant's claim waived in the sense that he is forever barred from raising his underlying ineffectiveness claim; rather, it is waived in the sense that he waived his opportunity to seek suppression by accepting a plea based on counsel's advice. That consequence can only be undone, if at all, through a proper ineffectiveness claim.

---

[6] The Dissent states that I have failed to recognize that different standards apply at the post-sentencing and pre-sentencing stages. My point is not that the same standard applies—it surely does not—but rather that if it is "unfair and unjust" to deprive Appellant the benefit of a favorable change in law, it is no less unjust or unfair to deny the same benefit to a defendant who raises his claim post-sentencing, or on direct appeal. In those cases, the failure to file a suppression motion precludes application of the new rule.

- 11 -

Finally, I address the Dissent's assertion that my analysis regarding Appellant's potential ineffectiveness claim "is fundamentally flawed." Dissenting Memorandum, at 9. What follows that conclusion is an explanation for why that claim would doubtlessly fail, since counsel is not required to anticipate changes in the law.

However, the exact same criticism lodged by the Dissent against my analysis applies to the settled law that a PCRA petitioner must generally assert PCRA counsel's ineffectiveness in a timely PCRA petition, despite the fact it is often impossible to do so. We state that PCRA petitioners must bring such claims in a PCRA petition, even in cases where the one-year time period for doing so has already expired. Just as those claims must be channeled through the PCRA, so too must the instant allegation. Thus, whether Appellant could ultimately achieve relief under the PCRA is distinct from the question of whether the claim must be heard under its framework.

Second, I agree that achieving relief would be difficult, but I am not persuaded that it is impossible. In **Commonwealth v. Haines**, 166 A.3d 449 (Pa.Super. 2017), we examined whether the trial court erred in denying a post-verdict motion for arrest of judgment based on **Birchfield**, which was decided the day before the verdict in Haines's case. The trial court denied the motion on the basis that "counsel should have known that **Birchfield** was pending in the Supreme Court and raised the issue before trial." **Id**. at 459 (citation to transcript omitted). Haines argued that his counsel was **not**

- 12 -

ineffective, and asked this Court to grant relief on direct appeal. We concluded that his argument was "best addressed through PCRA proceedings[.]" *Id*. at n.14. With respect to the issue identified by Judge Olson, we observed:

> We make no judgment here about whether counsel was ineffective for failing to raise an issue then pending before the Supreme Court. We note, however, that while "counsel cannot be held ineffective for failing to anticipate a change in the law[,]" *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 702 (2009), the issue of blood draws in DUI cases was before the United States Supreme Court at the time Haines filed his omnibus pre-trial motion. *See Birchfield v. North Dakota*, ––– U.S. ––––, 136 S.Ct. 614, 193 L.Ed.2d 494 (2015) (granting *certiorari* on December 11, 2015). Thus, Haines' case does not fit into the prototypical situation where counsel is charged with ineffectiveness because he failed to consult the "crystal ball." *See, e.g., Commonwealth v. Williams*, 364 Pa.Super. 630, 528 A.2d 980, 982–83 (1987) (finding counsel not ineffective for failing to anticipate United States Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and mount challenge to jury composition); *but cf. Commonwealth v. Humphrey*, 473 Pa. 533, 375 A.2d 717, 719–20 (1977) (concluding that counsel was ineffective for failing to object to witnesses' comments on defendant's silence despite lack of binding authority where (1) issue was scheduled to be reargued before the Pennsylvania Supreme Court, (2) several federal courts had decided the issue favorably to defendant, and (3) counsel showed unawareness of current state of Pennsylvania law).

*Id*. at n.15. Thus, *Haines* recognizes the general principle that counsel is not required to predict changes in the law but surmised that Haines may nonetheless have a viable claim based on the pendency of *Birchfield*.

However, *Haines* does not discuss the case cited by the Dissent, *Commonwealth v. Hannibal*, 156 A.3d 197, 231-32 (Pa. 2016). In *Hannibal*, defense counsel did not ask the trial court to inform the jury that

life imprisonment in Pennsylvania precludes the possibility of parole. Prior to Hannibal's trial, the United States Supreme Court heard argument in *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality). *Simmons* ultimately held that in appropriate circumstances such an instruction is required; however, the decision was not issued until after Hannibal was convicted. Hannibal argued that trial counsel was ineffective for failing to request the instruction because *Simmons* had been argued at the time of his trial. Our Supreme Court disagreed, citing the familiar principle that counsel cannot be deemed ineffective for failing to anticipate changes in the law.

The Dissent persuasively states that this case presents a similar situation, since the United States Supreme Court had heard argument in *Birchfield* at the time of Appellant's plea. Accordingly, like the defendant in *Hannibal*, any ineffectiveness claim premised on a failure to anticipate a change in law based on a pending case before the United States Supreme Court would fail.

However, I am not convinced that the present circumstances are akin to *Hannibal*. In that case, our Supreme Court recognized that, until *Simmons* was issued, a trial court had no authority to issue the requested instruction. *Id*. at 231 (citing *Commonwealth v. Travaglia*, 792 A.2d 1261, 1265 (Pa.Super. 2002)). A failure to request a jury instruction necessarily arises in the context of a trial, and a trial judge is at a loss to do anything but deny the request even knowing that the law might soon change.

- 14 -

In contrast, Appellant could have pursued the suppression motion based on a *Birchfield* theory. True, the trial court could not have granted the motion prior to *Birchfield*, but Appellant controlled the path of his litigation: accept the favorable plea and waive the suppression claim, or litigate the claim, proceed to trial, and gamble on a favorable change in law that would result in relief on direct appeal.[7] In the *Hannibal* situation, a trial court obviously cannot issue a conditional instruction. I express no opinion on the ultimate viability of that possible distinction or any other distinguishable factor but simply recognize, like our published opinion in *Haines*, that these particular circumstances do not necessarily preclude relief.

This case forces this Court to choose between authorizing trial courts to litigate ineffectiveness claims prior to sentencing versus adhering to the general rule of deferring such claims to collateral review. Absent clear direction from our Supreme Court authorizing litigation of effectiveness claims prior to sentencing, I believe that Appellant must litigate his theory as an

_____

[7] The Dissent submits that no difference exists between these situations, as in both cases "the trial court is bound by precedent to reach a certain result." Dissenting Memorandum, at 9. The Dissent therefore focuses only on what would occur at the trial court level, whereas my analysis recognizes that, if counsel had pursued the suppression motion, that claim would be preserved for retroactive application on direct review. If, as the Dissent posits, the writing was on the wall with respect to *Birchfield*, then it seems to me that counsel could be ineffective for failing to anticipate that particular change in law, as distinguished from failing to anticipate changes in law as a generic proposition. *See Haines*, *supra*.

- 15 -

ineffectiveness claim, regardless of how difficult that task may be.  Therefore,

I concur.